UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PAMELA MEEKS,               ) | |
| )                            | |
| Plaintiff,               ) | |
| )                            | |
| v.                           ) | CAUSE NO. 1:19-cv-00530-SLC |
| )                            | |
| COMMISSIONER OF SOCIAL       ) | |
| SECURITY, *sued as Andrew Saul*, ) | |
| )                            | |
| Defendant.               ) | |

## OPINION AND ORDER

Plaintiff Pamela Meeks appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). Meeks filed her opening brief on March 30, 2020, and the Commissioner filed his response brief on June 9, 2020. (ECF 11, 15). Meeks has not filed a reply brief, and her time to do so has now passed. N.D. Ind. L.R. 7-1(d)(3)(C). Thus, the matter is ripe for ruling.

Having considered the parties' arguments and the administrative record, the Commissioner's decision will be AFFIRMED, as neither of Meeks's two arguments raised on appeal is persuasive.

### I. FACTUAL AND PROCEDURAL HISTORY

Meeks applied for DIB in December 2016 alleging disability as of December 15, 2016. (ECF 6 Administrative Record ("AR") 10, 173). Her claim was denied initially and upon reconsideration. (AR 10, 81-101). On August 1, 2018, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing at which Meeks, who was represented by counsel; a witness; and a vocational expert testified. (AR 34-80). On December 4, 2018, the

ALJ rendered an unfavorable decision to Meeks, concluding that she was not disabled because she could perform her past relevant work as an unskilled boat washer as it is generally performed. (AR 20). Additionally, the ALJ found at step five that Meeks could perform a significant number of other unskilled jobs. (AR 21). The Appeals Council denied Meek's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Meeks filed a complaint with this Court on December 12, 2019, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Meeks alleges that a remand is necessary because the ALJ: (1) improperly evaluated her symptom testimony with respect to her supraventricular tachycardia (SVT) and syncope;[1] and (2) failed to adequately account for her SVT and syncope in the residual functional capacity ("RFC") assigned by the ALJ. (ECF 11 at 9-15).

At the time of the ALJ's decision, Meeks was sixty years old (AR 186); had a high school education (AR 190); and had fifteen years of work experience, which included work as a plate maker, production assembler, and boat washer (AR 72, 190, 207). In her application, Meeks alleged disability due to having a pacemaker, clinical depression, and "memory issues." (AR 189).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

---

[1] "SVT" is a type of fast heartbeat. *See Supraventricular Tachycardia*, Mayo Clinic, https://www.mayo clinic.org/diseases-conditions/supraventricular-tachycardia/symptoms-causes/syc-20355243 (last visited Aug. 5, 2020). "Syncope" is another term for "fainting or passing out. Someone is considered to have syncope if they become unconscious and go limp, then soon recover." *Syncope (Fainting)*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/syncope-fainting (last visited Aug. 5, 2020).

2

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.   ANALYSIS

*A.   The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether she can perform her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[2]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

### B.  The Commissioner's Final Decision

On December 4, 2018, the ALJ issued a decision that ultimately became the Commissioner's final decision.  (AR 10-22).  At step one, the ALJ concluded that Meeks had not engaged in substantial gainful activity after her alleged onset date of December 15, 2016.  (AR 12).  At step two, the ALJ found that Meeks's depression and anxiety were severe impairments.

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 404.1520(e).

4

(AR 13).  At step three, the ALJ concluded that Meeks did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (AR 13).

Before proceeding to step four, the ALJ determined that Meeks's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations.  (AR 20).  The ALJ assigned Meeks the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations. These include never climbing ladders, ropes, or scaffold[s]; occasionally climbing ramps and stairs and balancing; and the claimant must avoid unprotected heights, dangerous machinery with unprotected moving mechanical parts and commercial driving. The claimant can carry out simple instructions and routine and repetitive tasks, can perform occasional simple work-related decision-making, can maintain attention and concentration for two-hour intervals, and can respond appropriately to occasional/predictable changes in the workplace, but she cannot perform work requiring a specific production rate such as assembly line work.

(AR 18).

Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Meeks was able to perform her past relevant work as an unskilled boat washer as it is generally performed.  (AR 20-21).  Additionally, the ALJ found at step five that Meeks could perform a significant number of other unskilled jobs in the economy, including equipment washer/cleaner, hospital cleaner, and hand packager.  (AR 21).  Therefore, Meeks's application for DIB was denied.  (AR 22).

### C.  Symptom Testimony

Meeks first challenges the ALJ's discounting of her symptom testimony.  An ALJ's determination concerning the intensity and persistency of a claimant's symptoms is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness; as such, the Court will overturn the determination only if it is "patently wrong."  *Elder v.*

5

*Berryhill*, 774 F. App'x 980, 983 (7th Cir. 2019); *see also Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  Having said that, when considering a claimant's symptom testimony, the ALJ must still "build an accurate and logical bridge between the evidence and the result."  *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

"In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination."  *Karen A. R. v. Saul*, No. 1:18-cv-02024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019) (footnote omitted) (citing *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003)).  SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.  First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).  Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms such as pain and determine the extent to which they limit her ability to perform work-related activities.  *Id.* at 3-4; *see also Green*, 781 F. App'x at 526-27.

Notably, SSR 16-3p, which supersedes SSR 96-7p, "eliminates the use of the term 'credibility' and clarifies that symptom evaluation is 'not an examination of an individual's character.'"  *Rose v. Berryhill*, No. 16-cv-926-JPG-CJP, 2017 WL 3536738, at *4 (S.D. Ill. Aug. 17, 2017) (citing SSR 16-3p, 2016 WL 1119129, at *1 (Mar. 16, 2016)).  Having said that, "[t]he change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of

6

medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

Here, the ALJ found that Meeks's symptom testimony was "not entirely consistent" with the medical evidence and other evidence of record. (AR 20). In doing so, the ALJ considered various factors set forth in 20 C.F.R. § 404.1529(c)(3),[3] including Meeks's statements to medical providers, some of which were inconsistent; clinical examination findings, including patterns of exaggeration of impairments; diagnostic test results; the treatment that she underwent for her conditions; and her daily activities. (AR 13-20). Meeks, however, contends that the ALJ erred in four respects when assessing her symptom testimony: (1) by applying the wrong legal standard; (2) by "intimat[ing] repeatedly that [she] has a character for untruthfulness"; (3) by failing to consider her good work record; and (4) by failing to consider all of the evidence concerning her syncope and SVT episodes. (ECF 11 at 9-13). The Court will discuss each of Meeks's arguments in turn.

1. The Legal Standard

As a threshold matter, Meeks argues that the ALJ applied an improper legal standard by concluding that her testimony was "not entirely consistent" with the medical evidence and other evidence of record. (ECF 11 at 13). In a nutshell, Meeks contends that the ALJ's use of the phrase "not entirely consistent" indicates that the ALJ credited statements only if they were "entirely consistent" with the rest of the evidence of record, which is a more stringent legal

---

[3] These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of his pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications she takes; (5) treatment, other than medication, she receives; (6) any measures used to relieve pain or other symptoms; and (7) other factors. 20 C.F.R. § 404.1529(c)(3).

standard than the preponderance of the evidence standard that should have been applied.[4]

In *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018), the district court discussed the distinction between the "entirely consistent" boilerplate language often used by ALJs and the preponderance of the evidence standard:

> It is . . . yet another example of the continuous, confusing and meaningless boilerplate that is all too common in these decisions and that stubbornly persists in spite of the efforts of the Court of Appeals.
>
> Sadly, this current example doesn't even match what the Commissioner's own regulations say the standard for evaluating allegations about symptoms is: that the ALJ must determine whether those allegations 'can reasonably be accepted as consistent with the objective medical evidence and other evidence.' That . . . is clearly a different, and a not as rigorous, a standard than the ALJ[] demanded in this case, namely that allegations be 'entirely consistent' with the medical and other evidence.  If ALJs really want boilerplate paragraphs in their opinions so badly, why not simply echo the regulatory language?

307 F. Supp. 3d 865, 871 (N.D. Ill. 2018) (internal citations omitted); *see also John P. v. Saul*, No. 2:19cv0004, 2019 WL 4072118, at *11 (N.D. Ind. Aug. 28, 2019); *Justin H. v. Berryhill*, No. 2:18cv383, 2019 WL 2417423, at *12-13 (N.D. Ind. June 7, 2019); *Murphy v. Berryhill*, No. 1:18cv118, 2019 WL 1123511, at *15 (N.D. Ind. Mar. 11, 2019); *Farley v. Berryhill*, 314 F. Supp. 3d 941, 946 (N.D. Ill. 2018).

But in other instances, judges in this district have concluded that the use of this boilerplate language does not, by itself, serve as a basis for remand.

> While the ALJ's boilerplate language does not match the statutory standard, an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong.  Moreover, under SSR 16-3p . . . , the ALJ must "evaluate whether the statements are consistent with the objective medical evidence and the other

---

[4] "Preponderance of the evidence means such relevant evidence that as a whole shows that the existence of the fact to be proven is more likely than not."  20 C.F.R. § 404.901.

>
> evidence."  Therefore, the use of the language "not entirely consistent" is not, by itself, a basis for remand.

*Blackwell v. Berryhill*, No. 2:17-cv-00460-JVB-APR, 2019 WL 1397476, at *5 (N.D. Ind. Mar. 27, 2019) (citations omitted); *see also Joyce W. v. Berryhill*, No. 2:18-cv-104-JVB-JEM, 2019 WL 2353500, at *5 (N.D. Ind. June 3, 2019); *Torres v. Berryhill*, No. 2:17-cv-393, 2019 WL 2265367, at *6 (N.D. Ind. May 28, 2019).  The Seventh Circuit Court of Appeals, too, has stated that "the [boilerplate] formulation does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony."  *Lafayette v. Berryhill*, 743 F. App'x 697, 699 (7th Cir. 2018).  Consistent with this authority, I conclude that the ALJ's use of this boilerplate language, standing alone, is insufficient to require a remand.  *See, e.g.*, *Giboyeaux v. Saul*, No. 2:19-CV-76-JVB-SLC, 2020 WL 439943, at *4-5 (N.D. Ind. Jan. 9, 2020), *R. & R. adopted by Celia G. v. Saul,* 2020 WL 439974 (N.D. Ind. Jan. 28, 2020).

Here, the ALJ did not solely recite the boilerplate language in discounting Meeks's symptom testimony.  Rather, as explained above, the ALJ provided several reasons for her conclusion about Meeks's symptoms, including Meeks's statements to medical providers, which included inconsistencies; clinical examination findings, including patterns of extreme exaggeration; diagnostic test results; the treatment that Meeks underwent for her conditions; and her daily activities.  (AR 13-20).  As such, Meeks's challenge to the ALJ's determination about her symptom testimony rests on the legitimacy of these reasons.

2. <u>Inconsistent Statements</u>

First, Meeks contends that the ALJ erred by "intimat[ing] repeatedly that [she] has a character for untruthfulness and that this asserted fact play[ed] a prominent role" when assessing her symptom testimony.  (ECF 11 at 9).  Meeks emphasizes that Social Security Ruling 16-3p

9

clarified that symptom testimony evaluation is not an examination of a person's character.  She urges, rather, that the record suggests her depression or syncope caused "some major jolt in [her] life" that changed her from a reliable worker of fifteen years to being terminated for "pointing out."  (*Id.*).

In considering Meeks's symptom testimony, the ALJ observed that the record contained some inconsistent statements made by Meeks to providers.  Specifically, the ALJ observed that Meeks gave inconsistent reasons to providers why her work ended.  (AR 13).  In that regard, in June 2016, Meeks told Erin Miles, Psy.D., that she was "able to do her job without difficulty."  (AR 367).  In January 2017, she told Madhav Bhat, M.D., that she had "retired" from her job.  (AR 459).  And in March 2017, she told a nurse practitioner at the Northeastern Center that she lost her job because she could not remember to go to work.  (AR 494).

Meeks argues that discounting a claimant's symptom testimony on these few inconsistent statements is overly harsh because "ordinary human pride" may result in an individual characterizing a job termination in various ways.  (ECF 11 at 9).  That may be the case, but as the ALJ notes, there are other inconsistencies of record.  (*See* AR 13-14, 16-17 (citations omitted)). In August 2016, Dr. Miles performed a neuropsychological examination, documenting that Meeks's performance on several standardized tests "was in the range of extreme exaggeration . . . . similar to individuals who are not putting forth effort and at times feigning memory impairment."  (AR 364).  Dr. Miles documented similar "extreme exaggeration" and "extreme inconsistency in Mrs. Meeks's effort" on standardized tests administered almost two years later, in April 2018.  (AR 562-63).  Dr. Miles also wrote that Meeks's presentation in the office was "quite inconsistent" with her testing performance, stating:

10

"[I]f she were actually functioning at the level of impairment in which she tested I would not expect her to be able to drive, manage her household, or take care of her two dogs," all things that she was "doing without any significant difficulty."  (AR 563).  Similarly, in October 2016, Dr. Bhat completed a mental status exam of Meeks, concluding that she had a "[t]endency to exaggerate short-term memory disturbance."  (AR 456).  The opinions of the reviewing state agency psychologists, S. Hill, Ph.D., and J. Gange, Ph.D., also discussed these inconsistencies in the record.  (AR 86, 97).

An ALJ is entitled to discount a claimant's symptom testimony where it is not well supported by the objective medical evidence or where it conflicts with the claimant's prior statements to medical providers.  *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other objective medical evidence in the record." (citation omitted)); *Powers*, 207 F.3d at 435-36 ("The discrepancy between the degree of [symptoms] attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition."); 20 C.F.R. § 404.1529(c)(3).  Here, the ALJ properly considered that Meeks made inconsistent statements to providers, that several medical providers documented inconsistencies in her performance on clinical examinations, and that the providers considered such inconsistencies as indicative of exaggeration of her symptoms.

Further, the ALJ viewed Meeks's description of the severity of her impairments as inconsistent with her wide range of daily activities, which included living alone, caring for two pets, driving, shopping, paying bills and handling a checking account, attending to her personal care without the need of reminders, attending to household chores and yard work, making simple

11

meals, doing laundry, and going to lunch with a friend. (AR 13-17). "ALJs are tasked with reviewing the evidence provided and assessing whether a claimant is exaggerating the effects of her impairments, and reviewing daily-living activities is an important part of that evaluation." *Green*, 781 F. App'x at 526 (citations omitted); *see* 20 C.F.R. § 404.1529(c)(3). Meeks does not challenge the ALJ's assessment of her daily living activities.

Considering all of this evidence, the ALJ's discounting of Meeks's symptom testimony based on inconsistencies of record is supported by substantial evidence.

3. Work History

Next, Meeks asserts that the ALJ should have favorably considered her fifteen-year work history, including that she returned to work for several years after the implantation of a pacemaker in 2013 despite her diagnosis of SVT and syncope. (ECF 11 at 10-11; *see also* AR 190).

In *Hill v. Colvin*, the Seventh Circuit Court of Appeals stated that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." 807 F.3d 862, 868 (7th Cir. 2015) (citations and internal quotation marks omitted). Having said that, the Seventh Circuit clarified in later cases that "work history is just one factor among many, and it is not dispositive.*"* *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). That is, an "ALJ's silence [about a claimant's good work record] is not enough to negate the substantial evidence supporting the adverse credibility finding." *Id.*; *see also Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020); *Best v. Berryhill*, 730 F. App'x 380, 383 (7th Cir. 2018); *Summers*, 864 F.3d at 528-29. Therefore, that the ALJ did not expressly discuss Meeks's fifteen-year work history does not warrant a remand.

12

Furthermore, the ALJ did not improperly consider that Meeks was able to successfully perform skilled work for several more years after her syncope diagnosis and the implantation of her pacemaker in 2013.  (AR 13-14, 19); *see, e.g.*, *Reed v. Saul*, No. 18-cv-135-wmc, 2019 WL 4686787, at *5-6 (W.D. Wis. Sept. 26, 2019) (affirming the ALJ's credibility determination where the ALJ considered as a factor that the claimant continued working and exerting himself several years after the accident that gave rise to his physical problems).  In that regard, the ALJ noted that Meeks reported to Dr. Miles in June 2016 that she could perform her skilled job without difficulty.  (AR 13 (citing AR 367)).  And as discussed above, the ALJ also considered that Meeks gave inconsistent reasons as to why she stopped working in 2016.  (AR 13, 19).  In the face of this evidence, the ALJ did not commit reversible error by either failing to favorably consider Meeks's fifteen-year work history, or by observing that she was able to work for several more years after her syncope diagnosis and implantation of a pacemaker in 2013.

### 4. Syncope and SVT Episodes

Meeks also claims that the ALJ failed to adequately consider all of the evidence pertaining to her SVT and syncope episodes.  Meeks explains that her syncope problems first appeared in 2012, resulting in the implantation of a pacemaker in April 2013.  (ECF 11 at 10; AR 307, 317).  She states that she returned to work thereafter, but from April 2015 to March 2016 she experienced thirteen SVT episodes (about one per month), and from March 2016 to November 2016 nineteen episodes (about two per month).  (ECF 11 at 11; AR 388, 413, 475, 479).  She states that less than a month later, she was "pointed out" and terminated from her job, which she suggests is linked to her syncope.  (ECF 11 at 11-12).  Meeks emphasizes that after she stopped working, her syncope increased in frequency in that she experienced forty-two SVT

13

episodes from November 2018 to January 2018. (ECF 11 at 13 (citing AR 591-93)). She also points to a "repeated diagnosis" of syncope in treatment notes dated September 2017 and January 2018. (ECF 11 at 12 (citing 607)).

But "[t]he mere diagnosis of [a medical condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Groskreutz v. Colvin*, No. 15-C-510, 2016 WL 1060257, at *14 (E.D. Wis. Mar. 15, 2016). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove her claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). The records that Meeks cites to in her argument lack evidence of functionally limiting SVT or syncope episodes.

Furthermore, Meeks was seen by Sree Karanam, M.D., in May 2017 for an annual evaluation with her pacemaker, where she reported that she was "feeling well," continuing to take her medications, and had experienced no recent episodes of syncope. (AR 565). Rather, her last episode was "a few months ago," and she attributed that episode to not eating properly at the time. (*Id.*). She stated that she was able to complete her daily activities "without limitations." (*Id.*). After a physical examination, Dr. Karanam concluded that Meeks's pacemaker was functioning normally and that she should return for a follow up in another year. (AR 567). Notably, Dr. Karanam did not assign Meeks any restrictions or limitations stemming from her syncope.

Meeks nevertheless contends that the ALJ "leaves out further lines of SVT and syncope related evidence." (ECF 11 at 12). She argues that Dr. Karanam assessed in his May 2017 evaluation "'pauses lasting up to 6 seconds' even post-implantation of the pacemaker," and that

14

"these events should have been weighed and accounted for in the RFC but [were] not."  (*Id.* (citing AR 567)).  But Meeks's argument misinterprets Dr. Karanam's May 2017 treatment note.  Dr. Karanam mentioned the six-second pauses only in the context of discussing Meeks's medical history, noting that she had a pacemaker placed in April 2013 "for bradycardia with pauses lasting up to 6 seconds."  (AR 567; *see also* AR 565 ("S/P implantation of a . . . pacemaker on 4/24/13 . . . for bradycardia with pauses lasting up to 6 seconds.")).

Similarly, Meeks claims that Dr. Karanam assessed "Multiple ST/SVT events" even though she reported experiencing no recent syncope episodes, suggesting that the ALJ erred by considering "only what [episodes she was] aware of."  (ECF 11 at 9).  But similarly, Dr. Karanam noted "Multiple ST/SVT events" only in the context of reviewing the device check from November 2016, six months earlier.  (AR 566).  As such, this evidence does not undercut Dr. Karanam's reliance on Meeks's report that she had not experienced a syncope episode in recent months.

At the end of the day, an ALJ's assessment of a claimant's symptom testimony "will stand 'as long as [there is] some support in the record.'"  *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (alteration in original) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).  When assessing Meeks's symptom testimony, the ALJ built an adequate and logical bridge between the evidence of record (including, the objective medical evidence and the inconsistencies noted therein, the treatment that Meeks received for her conditions and the effectiveness of her medications, Meeks's statements to providers, and her daily activities) and her conclusion, *see Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), and her conclusion is not "patently wrong," *Powers*, 207 F.3d at 435.  As such, the ALJ's consideration of Meeks's

symptom testimony is adequately supported and articulated, and therefore, it will not be disturbed.

### D. RFC

In her second argument, Meeks essentially reiterates her challenge to the ALJ's consideration of her syncope and SVT. She asserts that the ALJ erred by failing "to account [in the RFC] for the fact that Meeks will have regular and ongoing times when, *inter alia*, she will collapse and then awake and not remember it happening." (ECF 11 at 14).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945(a)(3). When crafting the RFC, the ALJ need only include those limitations in the RFC "that [are] supported by the medical evidence and that the ALJ found to be credible." *McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 883 (7th Cir. 2018) (citation omitted).

As already discussed, Meeks has failed to produce evidence that she suffers from "regular and ongoing" fainting spells with functional memory loss. To the contrary, in May

16

2017 Meeks told Dr. Karanam that she had been "feeling well," that she had not had a syncope episode in recent months, and that she was able to perform her daily activities "without limitations." (AR 565). Dr. Karanam evaluated Meeks's pacemaker functioning and noted no abnormalities. (*Id.*). As to her alleged memory loss, Dr. Miles and Dr. Bhat both documented that Meeks's clinical examinations revealed exaggerations of her memory impairment. (AR 364, 456, 562-63). And Meeks testified that her alleged memory problems did not preclude her from performing various activities, including managing her own finances, caring for her home and pets, shopping, and reading. (*See, e.g.*, AR 45-48, 53-54).

Further, as the ALJ noted, the assigned RFC is consistent with the opinions of Shayne Small, M.D., and J.V. Corcoran, M.D., the reviewing state agency physicians, who both concluded that Meeks had only a minimal need for treatment for coronary complaints and minimal to unremarkable clinical findings on exams. (AR 20, 85, 95-96). Similarly, the ALJ relied on the opinions of the Dr. Hill and Dr. Gange, the reviewing state agency psychologists, who concluded that Meeks did not have any significant mental limitations, as well as the opinions of Dr. Bhat and Dr. Miles. (AR 15, 17, 86, 97). When assigning the RFC, the ALJ afforded Meeks the benefit of the doubt concerning her physical and mental impairments and assigned her a more conservative RFC, which was the ALJ's prerogative to do. That is, "[an] ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

17

Notably, in challenging the RFC, Meeks fails to cite or discuss any medical opinion of record that assigned her greater limitations. (*See* ECF 11 at 14-15). To reiterate, "the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). Meeks has failed to bear her burden of producing medical evidence demonstrating functional severity of her SVT and syncope symptoms, and as such, her second argument in pursuit of a remand is also unpersuasive. The RFC assigned by the ALJ is supported by substantial evidence, and the Commissioner's final decision will be affirmed.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Meeks.

SO ORDERED.

Entered this 5th day of August 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge